IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:17-CV-128-FL

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NORTH CAROLINA ex rel. BRONSON LOWERY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     ORDER<br>) |
| ALL MEDICINES, INC. d/b/a Townsend's Pharmacy; JAMES CRAIG BELL; and MELISHA WEST, | )<br>)<br>) |
| Defendants. | )<br>) |

This matter is before the court on motion to dismiss (DE 52) by defendants All Medicines, Inc. ("All Medicines") and James Craig Bell ("Bell") (collectively, "defendants").[1] The motion has been briefed fully, and in this posture, the issues raised are ripe for ruling. For the following reasons the motion is denied.

**STATEMENT OF THE CASE**

Plaintiffs commenced this False Claims Act case on June 26, 2017, by filing a complaint in camera and under seal, claiming that defendants submitted false claims to the United States and to the State of North Carolina (the "government"), through Medicare and Medicaid healthcare programs, in the course of pharmacy billing and reimbursement practices over a period of years.

---

[1] As set forth herein, the court entered default against defendant Melisha West ("West") on December 14, 2020, and defendant West did not participate in briefing on the instant motion. All references to "defendants" herein without qualification are to defendant All Medicines and defendant Bell, only. In addition, on December 10, 2020, the court denied in part the instant motion to dismiss as it pertains to claims brought solely by plaintiff/relator, Bronson Lowery ("relator"), and the instant order addresses the remaining part of the motion pending for decision.

Relator,[2] who is a former pharmacist employed by defendant All Medicines, asserted initially the following claims on behalf of himself and the government:

1. False claims and statements in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B);

2. Conspiracy to commit violations of False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C);

3. False claims and statements in violation of the North Carolina False Claims Act, § 1-607(a)(1) and (2);

4. Conspiracy to commit violations of the North Carolina False Claims Act, in violation of § 1-607(a)(3).

5. Fraud;

6. Payment under mistake of fact/restitution;

7. Unjust enrichment/restitution;

8. Wrongful termination (on behalf of relator only).

Relator sought in the original complaint trebled damages, compensatory damages, punitive damages, civil penalties, costs, and fees.

Upon motions by the government, the court extended the time to intervene five times, until March 31, 2020. On that date, the court unsealed the case and allowed the government to intervene

---

[2] The False Claims Act allows a person to bring a civil action "for the person and for the United States Government," wherein, as here, "[t]he action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1). The government thereafter may elect to "proceed with the action, in which case the action shall be conducted by the Government; or . . . notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." Id. § 3730(b)(4). Although the terms "relator" and "ex rel." are not defined in the statute, they are the names commonly used to denote a private individual suing on behalf of the government under the False Claims Act. E.g., Cochise Consultancy, Inc. v. United States ex rel. Hunt, 139 S. Ct. 1507, 1514 (2019).

in part and to decline to intervene in part, on the basis of its notice filed March 30, 2020. In particular, the court allowed the government 90 days to file a complaint in intervention.[3]

The government filed the operative complaint in intervention on June 16, 2020, which again asserts claims under the False Claims Act and the North Carolina False Claims Act, as well as common law claims, enumerated as follows:

1. Submission of False Claims in violation of 31 U.S.C. § 3729(a)(1)(A) and N.C. Gen. Stat. § 1-607(a)(1);

2. False Statements Material to False Claims in violation of 31 U.S.C. § 3729(a)(1)(B) and N.C. Gen. Stat. § 1-607(a)(2);

3. Conspiracy to submit false claims and statements in violation of 31 U.S.C. § 3729(a)(1)(C) and N.C. Gen. Stat. § 1-607(a)(3);

4. Common law fraud;

5. Unjust enrichment;

6. Payment by mistake;

The government seeks treble damages, civil penalties, actual damages, costs, and interest.

Defendants filed the instant motion to dismiss on October 6, 2020, seeking to dismiss the claims against them for failure to state a claim and for insufficient pleading under Federal Rules

---

[3] In its notice of intervention, the government stated that it elected to intervene in that part of the action "regarding false claims for prescription drugs falsely billed," and declined to intervene as to relator's "employment retaliation claims." (DE 31 at 1). The court's order allowing intervention directed relator to serve an amended complaint "as to any remaining issues upon defendants," with further instructions regarding that "part of the action in which the Governments have declined to intervene." (DE 32 at 2). As described further herein, the court has stayed all case activities with respect to the claims for which the government has declined to intervene.

of Civil Procedure 12(b)(6) and 9(b).[4] The government responded in opposition to the instant motion on October 27, 2020.

## STATEMENT OF FACTS

The facts alleged in the complaint[5] may be summarized as follows. Defendant All Medicines, doing business as Townsend's Pharmacy (the "pharmacy"), was owned by defendant Bell and operated in Red Springs, Robeson County, North Carolina, until it closed in approximately July 2017, while under investigation by the North Carolina Board of Pharmacy. (Compl. ¶ 11). The pharmacy submitted claims that were reimbursed by Medicare and Medicaid from 2014 through 2017. (Id.).

Defendant Bell, who is a resident of Robeson County, was a licensed pharmacist in North Carolina, was the pharmacy manager, and was ultimately responsible for all pharmacy claims submitted for reimbursement from Medicare and Medicaid. (Id. ¶ 12). Defendant West, who was a licensed pharmacist technician, was the office manager over the day to day pharmacy operations, including billing and recordkeeping and managing other pharmacy employees. (Id. ¶ 13). Defendants Bell and West oversaw, authorized, or approved the billing for prescription drugs at issue in 2014 to 2017. (Id. ¶ 14). Relator is a licensed pharmacist who was employed by the pharmacy from May 2014, to April 2017, and who worked under the supervision of Bell and West. (Id. ¶ 16).

---

[4] Defendants also moved to dismiss relator's original complaint "[o]ut of an abundance of caution," for lack of standing, lack of personal jurisdiction, insufficient process, and insufficient service of process; as well as on the basis that the operative complaint in intervention supersedes relator's complaint. (DE 52 at 1). On December 10, 2020, upon the parties' joint motion to stay, the court denied without prejudice defendants' motion to dismiss as it pertains to relator's claims not subject to government intervention, and stayed all case activities regarding those claims pending resolution of the government's operative claims in intervention. (DE 63).

[5] All references to the complaint or "compl." in citations herein are to the operative complaint in intervention, filed June 16, 2020.

4

Defendants billed more than $8,000,000.00 for prescription drugs and medications between 2014 and 2017 that was reimbursed by Medicare and Medicaid. (Id. ¶ 62). On numerous occasions a prescription drug label was printed, a prescription drug was billed, and payment was received, even though the prescription drug was never filled, picked up or provided to a patient. (Id. ¶ 73). Defendants routinely printed and kept the pending medication label in a bin for prescription drugs that had not yet been billed. (Id. ¶ 74). A label would then be pulled from the bin and filled only if the patient came into the pharmacy to pick up a medication into the pharmacy system and already billed. (Id.). This "labels-in-bin practice was abruptly changed in 2016 by Bell and West, and these saved labels for billed prescriptions were discarded, after questions were raised about possible fraudulent billing." (Id. ¶ 75).

Defendants and their pharmacy technicians knew that claims were being billed for prescription drugs that were often not dispensed, or the pharmacy often dispensed a medication that was cheaper than the one billed. (Id. ¶ 79). "Defendants West and Bell admitted to Relator Lowery that they knew that prescription drugs were not being provided as billed." (Id. ¶ 80).

Defendants engaged in four types of false claim billing schemes, comprising falsely 1) billing for prescription drugs that were not in the pharmacy inventory, 2) billing for more expensive extended release medications rather than cheaper generic immediate release medications that had been dispensed, 3) billing for prescription drugs based on fake prescriptions, and 4) billing for name brand prescription drugs rather than the generic drugs actually dispensed. (Id. ¶ 83).

For example, "[f]or each of the[] fake prescriptions, Defendant West or Bell opened the [billing software] system at the Pharmacy, typed in the name of a current patient at the Pharmacy, and then fabricated a record of a prescription for that patient so that a false billing claim would be submitted for reimbursement." (Id. ¶ 145). In addition, "[d]efendants' Pharmacy techs routinely

5

filled bottles with generic drugs rather than the name brand equivalent drugs printed on the label." (Id. ¶ 160). "Defendants' techs stated that Defendant West had directly instructed them to fill prescriptions in this manner, and this pattern and practice was known to both Defendants Bell and West." (Id. ¶ 161). "Defendant Bell directed a physical count for all controlled substances in [the pharmacy software] system based upon an audit, which was memorialized in [a] 'Physical Count Worksheet' dated January 31, 2017," attached to the complaint. (Id. ¶ 169). "The Physical Count Worksheet documents many controlled substances with large negative numbers in the 'Quantity on Hand' column, which is evidence suggesting Defendants billed for controlled substances that they never purchased." (Id. ¶ 175).

Defendants increased their profits, salaries and cash withdrawals through these schemes by receiving Medicare and Medicaid reimbursement for prescription items that they never purchased and, contrary to claims submitted, never dispensed to patients. (Id. ¶ 86). "Defendants Bell and West often withdrew or transferred large cash amounts from the Pharmacy during 2015 through 2017 for personal use." (Id. ¶ 87).

## COURT'S DISCUSSION

A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.  Analysis

   1.  Defendant Bell

Defendants argue that all claims against defendant Bell should be dismissed because the complaint is devoid of non-conclusory allegations of defendant Bell's involvement in the alleged fraud.

Plaintiff's first three claims are based upon submission of false claims and false statements to the government in violation of the False Claims Act and the North Carolina False Claims Act. Those statutes provide liability, in pertinent part, for:

> any person who--
>
> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> (C) conspires to commit a violation of subparagraph (A) [or] (B).

31 U.S.C. § 3729(a); see N.C. Gen. Stat. § 1-607(a).

To state a False Claims Act claim, a plaintiff must allege: "(1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due." United

7

States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 913 (4th Cir. 2003) ("Harrison II").[6]

In addition, plaintiff's claims under the False Claims Act, as well as plaintiff's common law claims sounding in fraud, are subject to pleading requirements of Federal Rule of Civil Procedure 9(b). "Rule 9(b) requires that [a] . . . plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States v. Triple Canopy, Inc., 775 F.3d 628, 634 (4th Cir. 2015). The purposes of Rule 9(b) are to 1) "ensure[] that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of," 2) "protect defendants from frivolous suits," 3) "eliminate fraud actions in which all the facts are learned after discovery," and 4) "protect[] defendants from harm to their goodwill and reputation." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) ("Harrison I").

In the context of a False Claims Act case, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id. In addition, where a complaint asserts a scheme to defraud, a complaint may "outline the dealings" that "form a solid foundation" for the plaintiff's theory of liability. United States ex rel. Bunk v. Gov't Logistics N.V., 842 F.3d 261, 276 (4th Cir. 2016); see U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009) (holding that in a False Claims Act case, it is sufficient to allege "particular details of a scheme to

---

[6] In all citations to cases in this order, internal quotation marks and citations are omitted unless otherwise specified.

submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted").

Here, plaintiffs have alleged sufficient facts to state their claims with particularity against defendant Bell. As an initial matter, the complaint alleges the time, place, and contents of the false representations, being multiple types of repeating patterns of prescription drug claims submitted to Medicaid and Medicare, from the pharmacy, during the time frame from 2014 to 2017. (E.g., Compl. ¶¶ 73, 77, 79, 83, 108-109, 118-120, 145, 159-160). The contents of the false representations are alleged with detail, including through examples, and by describing the structure of each of the asserted schemes. (Id.). With respect to identity, the complaint alleges sufficient facts regarding the nature of the closely-held business of the pharmacy and the structure of the schemes to permit an inference that the representations were made by pharmacy employees, with defendant Bell causing those representations to be made by virtue of his management and supervision over them.

In particular, facts regarding the nature of the business of the pharmacy and defendant Bell's role include that defendant is "a resident of Robeson County," and that he owned the pharmacy, which operated also in Red Springs, Robeson County. (Compl. ¶¶ 11-12). It is reasonable to infer that the pharmacy, by virtue of the fact that it was both owned and under management of defendant Bell, in a small town, was a small, closely held and managed, business. Defendant Bell "was the [p]harmacy manager, and was ultimately responsible for all [p]harmacy claims submitted for reimbursement from Medicare and Medicaid." (Id. ¶ 12). In addition, "[d]efendants Bell and West oversaw, authorized, or approved the billing for prescription drugs at issue in 2014 to 2017, and actively participated in the fraudulent schemes," asserted in the complaint. (Id. ¶ 14). Moreover, defendant Bell was himself a "licensed pharmacist." (Id.).

9

Based on the foregoing allegations, it is reasonable to infer that defendant directed, oversaw, or caused false statements to be made by employees of the pharmacy acting within the scope of their employment, including: 1) defendant West, who was a "pharmacist technician," acting as the "office manager over the day to day of the pharmacy, including billing and recordkeeping" and "manag[ing] other [p]harmacy employees"; (Id. ¶ 13); 2) Relator, who was a "licensed pharmacist" who "worked under the supervision of Bell and West." (Id. ¶ 16); and 3) other "pharmacy technicians." (Id. ¶ 79).

Furthermore, plaintiffs make additional allegations further supporting an inference of personal participation by defendant Bell in the asserted false claims schemes. They allege that the "labels-in-bin practice was abruptly changed in 2016 by Bell and West, and these saved labels for billed prescriptions were discarded, after questions were raised about possible fraudulent billing." (Id. ¶ 75). They allege that "[f]or each of the[] fake prescriptions, Defendant West or Bell opened the [billing software] system at the Pharmacy, typed in the name of a current patient at the Pharmacy, and then fabricated a record of a prescription for that patient so that a false billing claim would be submitted for reimbursement." (Id. ¶ 145). They also allege that "[d]efendants West and Bell admitted to Relator Lowery that they knew that prescription drugs were not being provided as billed." (Id. ¶ 80) (emphasis added).

Moreover, plaintiffs allege that "[d]efendants' techs stated that Defendant West had directly instructed them to fill prescriptions in this manner [using generic drugs instead of brand name drugs indicated on the labels], and this pattern and practice was known to both Defendants Bell and West." (Id. ¶ 161) (emphasis). "Defendant Bell directed a physical count for all controlled substances in" January 31, 2017. (Id. ¶ 169). Finally, "defendants Bell and West often

10

withdrew or transferred large cash amounts from the Pharmacy during 2015 through 2017 for personal use." (Id. ¶ 87) (emphasis added).

Accordingly, viewing the allegations in the light most favorable to plaintiffs, it is reasonable to infer that defendant Bell caused false claims to be submitted, and caused the alleged fraudulent schemes to persist, through his management of employees of the pharmacy.

Defendants raise several arguments in support of dismissal that are unavailing. For example, defendants argue that "the complaint does not allege that defendant Bell was the 'manager' of the pharmacy during the period that the alleged fraud occurred." (Defs' Mem. (DE 53) at 7). Defendants assert that "Defendant West and Relator managed the pharmacy throughout the period of the alleged fraud, and, during that time, Defendant Bell was an absentee owner." (Id.) (emphasis added). Defendants further assert that "[i]n reality, although Defendant Bell was the owner of the pharmacy, by 2014, his health had deteriorated such that he needed someone else to run the pharmacy." (Id. at 5 n. 2). "So, he hired Relator in May 2014 to run the pharmacy along with Defendant West." (Id.).

None of these facts asserted by defendants, however, are alleged in the complaint. As noted previously, the complaint instead alleges that defendant Bell "was the [p]harmacy manager, and was ultimately responsible for all [p]harmacy claims submitted for reimbursement from Medicare and Medicaid." (Id. ¶ 12) (emphasis added). The combination of this and additional allegations set forth in the court's analysis above permit the inference of management and direction by defendant Bell. Contrary facts asserted by defendants are not proper for consideration at this juncture, but rather may be raised at a later juncture in the case.

Defendants also argue that defendant Bell's involvement in the fraud "is not plausible given the lack of factual detail of his involvement and the alleged fact the Defendant Bell 'directed a

11

physical count' of medications, which obviously would (and allegedly, in fact did) memorialize the fraud." (Defs' Mem. (DE 53) at 8). This argument, however, draws inferences in defendants' favor, without crediting plausible inferences that may arise from the facts as actually alleged in the complaint. In particular, while it is conceivable that defendant Bell had no knowledge of fraudulent representations to Medicare or Medicaid, and while defendants may later bring forth facts that foreclose a reasonable inference of his involvement or knowledge, it is reasonable at this juncture to infer that defendant Bell directed the physical count to portray responsiveness or cooperation with an audit. (Compl. ¶ 169). Moreover, at this juncture, the fact that defendant Bell directed a physical count is significant not solely because of what the physical count revealed, but also as an example of his personal involvement in managing the pharmacy.

Defendants next argue that the complaint is deficient because it "does not take a firm position on whether Defendant Bell had actual knowledge of the fraud" versus "implied knowledge." (Defs' Resp. (DE 53) at 9). But, under the False Claims Act, plaintiffs may proceed under either a theory that the defendant "has actual knowledge" or "acts in deliberate ignorance of" or "in reckless disregard of the truth or falsity of the information" underlying the false claims. 31 U.S.C. § 3729(b). The complaint need not choose one theory of knowledge over the other, but rather may plead them in the alternative, as it does here. (Compl. ¶¶ 186-187, 192, 195).[7]

Defendants also challenge the allegation that defendant Bell "admitted to Relator Lowery that they knew that prescription[] drugs were not being provided as billed." (Defs' Mem. (DE 53) at 9 (quoting Compl. ¶ 80)). Defendants assert that the complaint "does not state when Defendant

---

[7] The case U.S. ex rel. Davis v. Prince, No. 1:08CV1244, 2010 WL 2679761 (E.D. Va. July 2, 2010), cited by defendants, is instructively distinguishable. There, the complaint alleged only that an owner of a company "received proceeds from the fraudulent conduct," but did not allege his "involvement in the alleged fraudulent scheme." Id. at *4. By contrast, in that case, the court determined the complaint properly alleged claims against "specific managers . . . who collaborated to engage in the alleged fraudulent activity." Id. Here, plaintiffs allege management by defendant Bell, not just receipt of proceeds. (E.g., Compl. ¶¶ 12, 14). Therefore, the partial dismissal in Davis is inapposite.

12

Bell allegedly made this admission, the contents or circumstances of this alleged admission, or any additional factual detail supporting that this 'admission' occurred at all or at a relevant time." (Id. at 9-10). Accordingly, defendants argue that this allegation is a "naked assertion" that need not be accepted as a factual allegation under Iqbal and Twombly. However, Iqbal and Twombly do not require factual allegations about an admission to state with particularity the time, contents, or circumstances of the alleged admission, or additional factual details to be credited upon a motion to dismiss. See, e.g., Iqbal, 556 U.S. at 678. Rather, the standard is that the court accepts allegations of "factual matter[s]" and "factual content," id. as opposed to "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd., 591 F.3d at 255; see Iqbal, 556 U.S. at 678-679. Here, the allegation that defendants West and Bell made an admission to relator "that they knew that prescription drugs were not being provided as billed" is a qualifying factual allegation about a statement that was made by an opposing party. (Compl. ¶ 80). It is not a mere legal conclusion or a bare assertion subject to being disregarded under Iqbal and Twombly. Therefore, for purposes of the instant motion, the court cannot disregard this allegation.

Defendants suggest that the complaint is insufficient to state a claim against defendant Bell for conspiracy, "because the Complaint fails to allege the details of any conspiratorial agreement between any of the Defendants." (Defs' Mem. (DE 53) at 10). "To plead a claim for an FCA conspiracy, the relator must allege that the conspirators agreed that a false record or statement would have a material effect on the Government's decision to pay a false or fraudulent claim." United States ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014). Here, the same allegations that support plaintiffs' first two False Claims Act claims, and common law claims

13

sounding in fraud, also support plaintiffs' conspiracy claim against defendant Bell. In particular, the allegations in the complaint permit an inference that defendant Bell directed the false claims and statements by employees of the pharmacy, including defendant West, (see, e.g., Compl. ¶¶ 11-14, 16, 75, 80, 87, 145, 161, 169), and that they thus together agreed to engage in a course of activity to cause the government to pay false or fraudulent claims.[8]

Defendants argue that dismissal is warranted because "40 percent of the paragraphs in the section of the Complaint outlining the alleged fraud are made 'upon information and belief.'" (Defs' Br. (DE 53) at 11). Defendants cite Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991) for the proposition that "[w]here allegations of fraud are explicitly or, as in this case, implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." (Defs' Mem. (DE 53) at 11). Here, however, multiple allegations pertinent to defendant Bell's participation in causing false claims and statements to be made are not based upon information and belief. (See, e.g., Compl. ¶¶ 11-14, 16, 80, 161, 169). Likewise, the court need not rely solely upon allegations made upon information and belief to establish critical elements of time, place, and contents of false statements made, where the complaint alleges the circumstances of multiple patterns of fraudulent claims in detail. (See, e.g., Compl. ¶¶ 85-86, 89, 93-95, 98-106, 110, 112-123, 125-126, 128, 132-133, 138-139, 141-144, 146-147, 157-159, 161-162, 175-179, 181-182). Moreover, those same allegations not made on information and belief provide the support factually for the remaining allegations made on

---

[8] Defendants also suggest that plaintiffs have not pleaded an unjust enrichment claim against defendant Bell because the complaint does not allege that plaintiffs conferred a measurable benefit upon defendant Bell and that defendant Bell consciously accepted that benefit. (Defs' Mem. (DE 53) at 12 n. 4). But, the complaint sufficiently meets these elements, including by alleging that defendants Bell and West "often withdrew or transferred large cash amounts from the Pharmacy during 2015 through 2017 for personal use." (Compl. ¶ 87).

14

information and belief. Thus, dismissal is not required due to the presence of allegations made on information and belief.

In sum, the complaint sufficiently alleges facts permitting an inference that defendant Bell personally participated in conduct causing the alleged false claims and statements to be made. Therefore, dismissal of claims against defendant Bell is not warranted.

2. Defendant All Medicines

Defendants argue that defendant All Medicines should be dismissed because the complaint fails to allege facts imputing the alleged fraudulent conduct to the company. However, "a corporation is liable for the . . . acts of its employees and agents done within the scope of their employment with the intent to benefit the corporation." United States v. Oceanic Illsabe Ltd., 889 F.3d 178, 195 (4th Cir. 2018). "Corporate liability can also arise if the employee or agent has acted for his own benefit as well as that of his employer."

Here, plaintiffs allege that employees of defendant All Medicines, particularly defendant Bell and defendant West, as well as unnamed pharmacy technicians, caused submission of alleged false claims and false statements in connection with Medicare and Medicaid claims submitted on behalf of All Medicines. (E.g., Compl. ¶¶ 73, 77, 79, 83, 108-109, 118-120, 145, 159-160). At a minimum, it is plausible to infer that these employees acted for their employer as well as for their own benefit. Therefore, the complaint alleges sufficiently claims against defendant All Medicines.

Defendants cite to Ward v. AutoZoners, LLC, 958 F.3d 254 (4th Cir. 2020), for the following proposition:

> Agency law provides only four ways an employer can be held vicariously liable for punitive damages based on the act of an employee: (1) when the employer authorizes the employee's tortious act; (2) when an employee is unfit and the employer acts recklessly in employing the employee; (3) when the employee served in a managerial capacity and was acting within the scope of employment; or (4)

15

when the employer or managerial agent of the employer ratified or approved the act.

Id. at 263 (emphasis added). Where punitive damages are not at issue in the instant motion, this citation is not helpful to the court's analysis. In any event, the complaint alleges actions by employees who "served in a managerial capacity . . . acting within the scope of employment," id., thus satisfying this test.

Defendants also argue that "by alleging a conspiracy to violate the [False Claims Act], . . . [p]laintiffs appear to be acknowledging that the conduct at issue was not committed by people acting as agents of the corporation." (Defs' Mem. (DE 53) at 13). This is because, defendants suggest, "if the conduct were conducted by corporate agents, the conspiracy count would be barred by the intracorporate conspiracy doctrine." (Id.). This argument misses the mark on two fronts. First, "the intracorporate immunity doctrine does not apply where a corporate officer has an independent personal stake in achieving the corporation's illegal objectives." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). Here, the complaint alleges that defendants Bell and West withdrew proceeds for their personal use. (Compl. ¶ 87). Second, corporate liability may attaches where employees act both in the interest of the corporation and in their own personal interest. Oceanic Illsabe Ltd., 889 F.3d at 195. Accordingly, plaintiffs' assertion of a conspiracy claim does not necessarily preclude other claims against defendant All Medicines.

In sum, plaintiffs' claims against defendant All Medicines are supported by applicable legal standards and the allegations in the complaint. Therefore, defendants' motion to dismiss defendant All Medicines must be denied.

**CONCLUSION**

Based on the foregoing, defendants' motion to dismiss (DE 52) is DENIED. Where the court previously stayed case scheduling conference activities, on October 9, 2020, pending

16

decision on the instant motion, the court now LIFTS in part such stay for that part of the case pertaining to claims asserted by the government.[9] An initial order regarding planning and scheduling will follow.

SO ORDERED, this the 14th day of April, 2021.

LOUISE W. FLANAGAN
United States District Judge

---

[9] Per the court's December 10, 2020, order, a stay remains in place regarding relator's non-intervened claims, pending resolution of the litigation of the government's intervened claims in this action.